# Applicability of Control of Paperwork Amendments of 1978 to Certain Activities of the Civil Rights Division

Control of Paperwork Amendments of 1978, which impose restrictions on federal agencies' collection of data from educational institutions, do not apply to collection of data by the Department of Justice in connection with school desegregation litigation.

February 6, 1980

## MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL, CIVIL RIGHTS DIVISION

This responds to your request for an opinion on the applicability of the Control of Paperwork Amendments of 1978, 20 U.S.C. § 1221–3 (Amendments), to your Division's collection of information from educational institutions in connection with the litigation of school desegregation cases. More specifically, you ask whether your division's litigation of school desegregation cases is a "federal education program" under the Amendments. You identified the following three categories of information-collecting activities conducted by your Division in connection with such cases:

(1) Formal discovery requests in active school desegregation cases;

(2) Collection of information from defendants in inactive school desegregation cases to determine whether the cases should be dismissed; and

(3) Collection of information from educational institutions for the purpose of determining whether litigation should be initiated.

Because your Division conducts all of the above activities in connection with your litigating responsibilities and compliance with the Amendments' restrictions would interfere with the enforcement of federal antidiscrimination statutes, we conclude that the Amendments do not apply to such activities. For that reason, any regulations promulgated to implement the Amendments similarly would not apply to those activities.

The Control of Paperwork Amendments of 1978 were enacted to coordinate the collection of data from educational institutions by federal agencies "[i]n order to eliminate excessive detail and unnecessary

and redundant information requests and to achieve the collection of information in the most efficient and effective possible manner. . . ." 20 U.S.C. § 1221–3(a)(1)(A). Under the statute, the Secretary of Education [1] must approve requests by federal agencies for data and information directed to educational institutions. Each agency is required to submit to the Secretary a plan for each collection of information indicating how the information will be used, the methods of analysis that will be applied to such data, a timetable for the dissemination of the collected data and an estimate of the costs and man-hours that will be incurred by each educational institution in completing the request and by the federal agency in collecting, processing, and analyzing the information. 20 U.S.C. § 1221–3(b)(1). The Secretary is required to ensure that each request has been approved and publicly announced by the 15th of February preceding the beginning of a new school year, unless there is an urgent need for the information or very unusual circumstances. 20 U.S.C. § 1221–3(b)(2)(A). Prior to approval, each educational agency subject to a request is afforded a 30-day period to comment to the Secretary on the information request. 20 U.S.C. § 1221–3(b)(3).

The Amendments set forth two conditions for its applicability to information requests by federal agencies:

(1) The respondents must be primarily educational agencies or institutions; *and*

(2) The purpose of a federal agency's activities must be to obtain information needed for the management of, or the formulation of, policy related to federal education programs or research or evaluation studies related to the implementation of federal education programs. 20 U.S.C. § 1221–3(a)(1)(A).

Because your information-collection activities are directed at educational institutions, the first condition is satisfied and the applicability of the Amendments depends, therefore, upon whether your activities meet the second condition. For two reasons, we conclude that they do not. First, the information you collect is needed to decide whether to initiate, maintain, or discontinue litigation, not to manage or formulate policy or to conduct research or evaluation studies. Moreover, even if a decision to initiate or discontinue litigation could be viewed as formulating policy, we believe that your litigating activities are not "federal education programs" for the purpose of the Amendments. It is true that a construction of the Amendments must be guided by the Conference Report's direction that they are "to be interpreted broadly so as to

---

[1] The Act originally required the Secretary of Health, Education and Welfare to approve such requests. However, under the Department of Education Organization Act, Pub. L. No. 96–88, § 301(a)(2)(D), 93 Stat. 677 (1979), this function was transferred to the Secretary of Education.

include as many activities as possible." H.R. Rep. No. 1753, 95th Cong., 2d Sess., 313 (1978). But a construction that would include school desegregation litigation as a "federal education program" would strain the meaning of that term far beyond common understanding of what constitutes an education program. Nothing in the legislative history of the Amendments warrants such a construction. Moreover, the Amendments explicitly provide:

> Nothing in this section [20 U.S.C. § 1221-3] shall be construed to interfere with the enforcement of the provisions of the Civil Rights Act of 1964 or any other nondiscrimination provision of Federal law.

20 U.S.C. § 1221-3(b)(6). In our view, this provision [2] militates against regarding your litigating activities as education programs. If the Amendments were construed to cover such activities, your Division would have to comply with their restrictions on information requests each time you requested information from each school defendant or target of investigation. Compliance with the Amendments' comment period and public announcement requirement when litigating a case or deciding to institute or discontinue litigation would undoubtedly substantially interfere with the expeditious enforcement of federal nondiscrimination laws.

For these reasons we conclude that the term "federal education program" is not to be construed to encompass the information collection activities involved here. Accordingly, the definition of "federal education program" in the interim procedures [3] promulgated by the Department of Health, Education, and Welfare under the Act is not to be construed to encompass such activities.

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[2] The legislative history of the Amendments contains no discussion of this provision, which was included in both the House and Senate bills. H.R. Rep. No. 1137, 95th Cong., 2d Sess. 134-38, 177 (1978); S. Rep. No. 856, 95th Cong., 2d Sess. 5, 112-16, 158-59 (1978); H. Conf. Rep. No. 1753, 95th Cong., 2d Sess. 313-15 (1978). The provision appears to have its origin in the Education Amendments of 1976, § 406, 90 Stat. 2231, which restricted only the Education Division and the Office of Civil Rights in the Department of Health, Education and Welfare in their collection of information. The restrictions along with the proviso were added on the floor of the Senate, 122 Cong. Rec. 28017-28020 (1976), and survived the Conference. H. Conf. Rep. No. 1701, 94th Cong., 2d Sess. 242 (1976).

[3] The interim procedures define "Federal Education Program" as "any Federal activity with a primary purpose of offering instruction, financing instruction, or affecting an educational agency's or institution's ability to offer instruction or provide access to education." 44 Fed. Reg. 46535, 46538 (1979).